GILMORE, APPELLANT, *v.* GRANDVIEW CEMENT PRODUCTS,
INC., APPELLEE.*

(No. 6902—Decided May 1, 1962.)

*Messrs. Schwartz, Gurevitz & Schwartz, Mr. Charles R. Andrews, Mr. Richard V. Patchen, Messrs. Barkan & Barkan* and *Mr. Robert H. Burns,* for appellant.

*Messrs. Dresbach, Crabbe, Newlon & Bilger, Mr. Charles Brown* and *Mr. Wilbur W. Jones,* for appellee.

FESS, J. This is an appeal on questions of law from a judgment entered upon a verdict for the defendant directed by the court. At the trial below it was agreed that a dispositive issue

---

*Upon retrial October 3, 1962, unanimous verdict for defendant.

in the case was whether one Bob Allen, a general employee of the defendant, was, at the time of the accident, a loaned servant of American Terrazzo & Cement Company. By agreement, plaintiff submitted his evidence on such issue and rested subject to permission to reopen in the event the trial court should overrule defendant's motion for the direction of a verdict at that stage of the trial of the case. On motion of the defendant, the court directed the jury to return a verdict for the defendant and judgment was entered accordingly.

The evidence discloses that on the day in question the plaintiff was employed and working for Terrazzo as a laborer engaged with a fellow employee in the unloading of a large quantity of drainage tile from the truck of the defendant. Terrazzo was engaged as a contractor in laying tile in ditches along a number of streets in a housing development in Hilliard, Ohio. Bob Allen, who was dismissed as a party defendant in the case, was in the general employ of the defendant as a driver of defendant's truck. Allen's duties in general were to drive, deliver block and tile, run defendant's block and tile machines, and work in defendant's yard as a laborer.

On the day in question Allen was directed by defendant to take a load of tile to the construction area in Hilliard. He was instructed by defendant to go to a certain point and wait for Terrazzo's men to meet him and to do whatever they told him. The president and general manager of the defendant testified as upon cross-examination as follows:

"Q. Was he [Allen] given any specific instructions on how he should deliver those tiles on July 16, 1959? A. He was given instructions to go to a certain point and wait for American Terrazzo's men to meet him.

"Q. And what was he to do when American Terrazzo's men met him? A. Whatever they told him to do; he was under their orders after he hit the job.

"Q. In other words, your instructions to this employee on July 16, 1959, were to drive this truckload of tile out to the job in Hilliards, meet with someone from American Terrazzo and unload them where he was told to unload them? A. That is right."

When the truck arrived at the site a fellow employee of plaintiff, Aressa, met Allen and motioned to him to drive the

truck up the street alongside a ditch. Plaintiff and Aressa were told by Terrazzo's foreman to take the tile off the truck two at a time and place them in the curb or up on the bank. As Allen drove the truck down the street, plaintiff and Aressa, in unloading the tile, directed Allen when to start and stop. As the unloading proceeded plaintiff got up on the truck and directed its progress from his position on the truck. At the end of the street the truck was moved over to the left side and backed down so that the tile could be unloaded from that side. During this movement the plaintiff attempted to climb up on the truck again and fell causing his injuries which are the subject of this action. Other than driving the truck, Allen did not participate in the actual unloading of the tile.

The foregoing synopsis of the evidence is substantially as related in defendant's brief.

As is frequently the case, the statement of the rule governing this decision is clear but its application to a given set of facts is difficult.

Where one party loans his servant to another for a particular employment in the business and under the direction of the latter, the servant, for anything done in that employment, must be regarded as the servant of the party to whom he is loaned, although he remains the general servant of the party who loaned him. *Halkias* v. *Wilkoff Co.* (1943), 141 Ohio St., 139; *Giovinale* v. *Republic Steel Corp.*, 151 Ohio St., 161. And it is said that the test is which of the employers had the right of control of the servant. *Councell* v. *Douglas,* 163 Ohio St., 292. But this rule likewise is difficult of application. When there is exclusive control and direction by one or the other no difficulty is encountered, but what about joint or division of control, work on a co-operative venture, temporary or incidental control?

And where one employs another to do certain work for him, the mere right reserved by the employer to direct as to the quantity of work to be done, or the condition of the work when completed, is not a right to control the mode or manner of doing the work so as to justify the conclusion that the relationship as between the employer and the contractor is either that of principal and agent or master and servant. *Councell* v. *Douglas, supra.* If an artisan, such as a plumber, is supplied to a contractor who tells him where and what he desires installed

or repaired, such artisan does not necessarily become the employee of the contractor even though a modicum of control be exercised by the contractor. As well stated by this court in *Bennett* v. *Wilson,* 113 Ohio App., 503, the mere fact that services are rendered at the request of a man, and for the benefit and convenience of his business, does not show that he controlled the mode or manner of rendering the services.

In the instant case Allen was engaged in driving the defendant's truck incident to the business of the defendant who presumably had agreed with Terrazzo to deliver the tile which the latter had purchased at such points and in such manner as Terrazzo directed. Upon the assumption that Terrazzo controlled the direction and the stopping and starting of the truck, nevertheless Allen was engaged in the course of his employment with the defendant and in the furtherance of its business at the time of plaintiff's accident. For its convenience Terrazzo wanted the tile delivered to the job site rather than to have it unloaded in one place from which Terrazzo would in turn have to string it along the trenches. Defendant, on the other hand, was relieved of employing additional laborers to unload the tile. Although the record is devoid of the exact terms of the contract of purchase, including delivery of the tile, in the event Terrazzo had supplied the two laborers to unload the truck it could well be contended that the operation was within the control of the defendant rather than Terrazzo.

In the instant case it is to be inferred from the evidence that Terrazzo's foreman told Allen where to drive but not necessarily the manner in which he should drive. Plaintiff and his fellow employees, as a matter of convenience to themselves and Allen, called out to Allen when to stop and when to start. In *Giovinale* v. *Republic Steel Corp.,* 151 Ohio St., 161, the court quotes with approval from *Summary of American Law* as follows:

"Where the master lends or leases his servant to X and during the course of his work for X he injures the plaintiff, the master's liability depends on the nature of the arrangement between him and X as to who had control of the servant while he is performing X's work; if he is to obey X's directions as to the manner of performing the work, then the liability is on X; but

if X's power to direct the servant is confined to showing him the work to be done, then the master is responsible."

The third paragraph of the syllabus reads as follows:

"Where an employer sends an employee with employees of another person to perform the work of the employee's employer, and where, further, the sole work to be performed by the employee is that of his employer and the only authority of the employees to direct the employee is confined to showing him the work to be done, the employee is not legally under the control and direction of the employer of the employees."

In our opinion the circumstances in the instant case are indistinguishable from those in the *Giovinale case.*

In *Redmond* v. *Republic Steel Corp.,* 102 Ohio App., 163, it was held that:

"Where an employer assigns a crane operator to assist the crew of an independent contractor on a construction project for the employer on the employer's premises, the employer retaining the sole right to assign, remove, direct and control the crane operator in the operation of his employer's crane, and the manner in which it is to be operated, except such direction and control as results from the independent contractor's employee informing the crane operator of the places where the crane is needed and the stationing of another employee of the independent contractor at the master switch to de-energize the crane to prevent any movement of the crane while his men worked, such employer is liable to an employee of the independent contractor for injuries sustained as a result of the crane operator's negligent operation of the crane."

According to the syllabus it is stated that the employer of the crane operator retained the sole right to assign, remove, direct and control such operator in the operation of its crane and the manner of its operation, except such direction as was given by the independent contractor's employee informing the operator of the places where the crane was needed, etc.

Accordingly the employer of the crane operator exercised much greater control over the operator than the defendant exercised over Allen in the instant case. But in reaching its conclusion the court cites *Larocca* v. *American Chain & Cable Co., Inc.,* 13 N. J., 1, 97 A. (2d), 680, as follows:

"Generally, question of whether general employer, or specific employer is master at a particular time turns upon question of who has right to exercise control over the servant, and in absence of evidence to the contrary, there is an inference that servant remains in his general employment so long as, by service rendered another, he is performing business entrusted to him by the general employer, and there is no inference that because general employer has permitted a division of control, he has surrendered it."

In the opinion the court, in the *Redmond case, supra*, further states:

"Defendant maintains that Schweizer Dipple had control over the crane operator since it directed the movement of the crane by means of signals. This claim cannot be sustained. The crane was furnished by the defendant. Its function was to put the workmen on the scaffolding in position to work. Only Schweizer Dipple knew the places where the scaffolding was needed and, of necessity, it alone was able to transmit such information to the operator of the crane. Such combined activity was no more than teamwork between two sets of workers co-operating to accomplish the work at hand.

"In *Standard Oil Co.* v. *Anderson,* 212 U. S., 215, 53 L. Ed., 480, 29 S. Ct., 252, Justice Moody, in discussing a situation somewhat similar, said, at page 226:

" 'The giving of the signals under the circumstances of this case was not the giving of orders, but of information, and the obedience to those signals showed co-operation rather than subordination, and is not enough to show that there has been a change of masters.' "

Therefore, when there is a division of control, it is not to be held that the general employer has surrendered control to a sufficient extent as to be relieved of respondeat superior. See also the recent decision in *Bennett* v. *Wilson,* 113 Ohio App., 503.

In the light of the above observations and authorities it is therefore concluded that upon the state of the record at the time the court directed the jury to return its verdict, reasonable minds could differ upon the issue decided by the court as a matter of law—whether at the time of plaintiff's accident defendant or Terrazzo had the right of control over Allen to the extent of relieving defendant of responsibility.

One further observation. In determining the motion for a directed verdict the trial court could not ignore or disbelieve the somewhat self-serving testimony of the defendant's president, quoted above in the statement of facts, but upon submission of the issue to the jury it could well consider the credibility of this testimony in determining whether the defendant had actually surrendered control of Allen to Terrazzo.

Judgment of the Common Pleas Court reversed and cause remanded thereto for a new trial.

*Judgment reversed.*

DUFFEY, P. J., and SMITH, J., concur.

SMITH and FESS, JJ., of the Sixth Appellate District, sitting by designation in the Tenth Appellate District.