DECISION.
Introduction
The two appeals consolidated in this decision stem from a decree of divorce granted to defendant-appellant/cross-appellee Richard Novick and plaintiff-appellee/cross-appellant Barbara Novick on February 9, 2000. In Mr. Novick's appeal, he contests the prospective award of spousal support and the award of moving expenses to Ms. Novick. In her cross-appeal, Ms. Novick contests the terms of the spousal support and the trial court's failure to award her attorney fees. Because we find that none of the assignments of error advanced in support of either appeal have merit, we affirm the judgment of the domestic relations court.
 Facts
The parties were married on February 24, 1968, and had two children, who are both now emancipated. Ms. Novick, currently fifty-two years old, has a high-school diploma. During the marriage, she was not employed outside of the home except for an occasional part-time job; her primary responsibilities were caring for the children and the home. For the last ten years, Ms. Novick has bred and shown Labrador retrievers for Sedgehaven Labradors, a business owned by the parties, which has been marginally profitable. Mr. Novick, fifty-four years old, has an associate's degree and has been working for ATT for the past twenty-two years as a troubleshooter. He has been the primary wage earner.
On August 13, 1999, the parties separated, and Ms. Novick moved into the home of Steven Rioch, a family friend who shared her interest in breeding and showing Labradors. Mr. Novick remained in the marital home. In October 1999, Ms. Novick filed for divorce and was awarded temporary spousal support in the amount of $500 per month. The parties entered into several stipulations regarding their assets and liabilities, but a hearing was necessary to determine remaining issues regarding property division and spousal support.
In order to demonstrate her need for spousal support, Ms. Novick testified at the property hearing that, for the past two years, she had suffered from stiffness and aches and pains. In the summer of 1999, Ms. Novick was diagnosed with fibromylagia, and, according to her treating physician, this condition affected Ms. Novick's ability to maintain employment. But her physician also testified that she could perform sedentary work such as typing. Ms. Novick testified that, approximately seven to ten days of each month, she suffered from pain and stiffness that prevented her from working. Mr. Novick, contesting any award of spousal support, presented evidence that Ms. Novick was cohabitating with Rioch pending the divorce.
At the conclusion of the hearing, the magistrate, after dividing the remaining property, issued findings of fact and conclusions of law recommending that Mr. Novick pay Ms. Novick $31,169.50 as an equalizing payment. With respect to spousal support, the magistrate made the following findings: (1) Ms. Novick was clearly entitled to spousal support, and (2) Ms. Novick and Rioch were cohabitating, "at least on a temporary basis." Based on these findings, and considering case law that supported a termination of spousal-support payments, or a significant reduction in their amount, after a finding of cohabitation with another, the magistrate recommended a contingent award of spousal support. Specifically, she recommended that if Ms. Novick moved out of Rioch's home and established her own residence and finances, then Mr. Novick was to pay spousal support in the amount of $1750 per month for eight years, effective March 1, 2001. Ms. Novick was to notify Mr. Novick by February 1, 2001, of her intent to move. The magistrate also recommended that Mr. Novick pay $5,000 in moving expenses and attorney fees, if Ms. Novick moved out of Rioch's home. Both parties filed objections to the magistrate's decision, which were overruled by the trial court on January 22, 2001. A decree of divorce was entered on February 9, 2001. These timely appeals followed.
 Mr. Novick's Appeal
In a single assignment of error, Mr. Novick maintains that the trial court abused its discretion in awarding Ms. Novick spousal support after finding that Ms. Novick and Rioch were cohabitating, and in ordering the payment of moving expenses. We disagree.
Initially, we note that, with respect to the award of spousal support, the parties are not disputing the magistrate's conclusion of law providing that when a person, otherwise entitled to spousal support, is found to be cohabitating with another, spousal support is deemed unnecessary or is significantly reduced. Furthermore, Mr. Novick does not argue that Ms. Novick, absent her cohabitation with Rioch, is not entitled to spousal support. Instead, Mr. Novick contends that the magistrate overstepped her authority by recommending a prospective award of spousal support based on factors that were not in the record: that Ms. Novick had moved out of Rioch's home and established her own residence and finances.
A domestic relations court is endowed with broad discretion in fashioning an award of spousal support.[1] Accordingly, this court will not reverse a spousal-support award absent an abuse of discretion.[2]
An abuse of discretion is more than an error of law; it implies that the court has acted unreasonably, arbitrarily or unconscionably.[3] If there is some competent, credible evidence to support the court's decision, there is no abuse of discretion.[4]
Upon a thorough review of the record, we cannot say that the trial court acted arbitrarily, unreasonably or unconscionably in making a contingent award of spousal support. The age of the parties, the disparity in their incomes, educations, and earning abilities, the need for Ms. Novick to acquire education, training or job experience, and the duration of the marriage all militated in favor of an award of spousal support.[5] Thus, having considered the statutory factors listed in R.C. 3105.18(C)(1), the trial court determined that Ms. Novick would be entitled to spousal support, but for the fact that she was cohabitating with Rioch. Despite Ms. Novick's claim at trial that her relationship with Rioch was platonic, there was competent, credible evidence presented at the hearing to support the magistrate's finding that she was cohabitating.[6]
Although the magistrate found that Ms. Novick was cohabitating, she qualified that finding by indicating that the cohabitation appeared to be on a "temporary basis." Additionally, the magistrate specifically found and took into consideration that it would have been difficult financially for Ms. Novick to set up her own household pending the divorce. At the time of the property hearing, she was receiving only $500 per month in
temporary support, and she had not yet received any cash distributions from the division of the marital assets. Furthermore, even though Ms. Novick testified on cross-examination that she could have possibly moved in with either of her children or her father, her main concern was for the dogs that she owned and was showing and/or breeding through her business. She testified that there would have been no place to keep the dogs at her father's or children's homes, but that Rioch had offered to build a kennel for her on his land. Based on the specific circumstances presented here (Ms. Novick's inability to set up her own household until she received money from the property settlement, her interest in continuing her business, Sedgehaven, and the temporary nature of the living arrangement), we cannot say the magistrate arbitrarily recommended a prospective award of spousal support.
 Because there was competent, credible evidence to support the magistrate's findings with respect to Ms. Novick's entitlement to and need for spousal support, the trial court did not abuse its discretion in fashioning an award that it deemed equitable. Furthermore, we note that Ms. Novick had secured an apartment for herself beginning February 1, 2001. The final merits hearing was held on February 7, 2001, and there is no indication in the record that Ms. Novick was still cohabitating with Rioch at the time of that hearing. Accordingly, by the time the decree of divorce was journalized on February 9, 2001, and the spousal support order went into effect, Ms. Novick was not cohabitating.
 In regard to Mr. Novick's concern that he will have to monitor Ms. Novick's living arrangements, we note that he would most likely be monitoring the situation even if there had been no finding of pre-decree cohabitation, because the trial court, retaining jurisdiction over the award, will still have authority to modify the spousal support if Ms. Novick cohabitates or marries after the support payments have begun.
 Finally, we hold that the trial court did not abuse its discretion in ordering Mr. Novick to pay $5000 in moving expenses and attorney fees, as the court had the authority to do so in fashioning an equitable division of the property. Accordingly, Mr. Novick's assignment of error is overruled.
 Ms. Novick's Appeal
Ms. Novick advances six assignments of error in her cross-appeal. In her first assignment of error, she maintains that the trial court erred by awarding spousal support for only eight years. We disagree.
As we have already stated, a domestic relations court has broad discretion in fashioning an award of spousal support and the amount of that award.[7] But, in any divorce proceeding, the court must first divide the marital assets and debts before it determines whether spousal support is necessary, and, if so, the appropriate amount.[8] Pursuant to R.C. 3105.18(B), the court may award reasonable spousal support in an amount that it deems equitable.
In Kunkle v. Kunkle, the Supreme Court of Ohio held,
 Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
 Ms. Novick argues that the duration of the marriage, the disparity in incomes, and the state of her health mandated an indefinite award. But the magistrate's rationale for a limited award was clear. Ms. Novick was only fifty-one years of age at the time of the proceedings below. She claimed that the state of her health did not permit her to work, but the magistrate's finding to the contrary was supported by the record. While Ms. Novick had no plans to seek training or to further her education, the eight-year award will permit her to strengthen her ability to become gainfully employed. Ms. Novick's first assignment of error is overruled.
In her second assignment of error, Ms. Novick claims that the trial court's award of $1,750 per month as spousal support was inequitably low. We are unpersuaded.
During the proceedings below, Ms. Novick estimated her monthly expenses at $2,250.20. The record indicates that the magistrate found this budget to be slightly inflated, and the fact that $600 per month was allotted for food solely for Ms. Novick tended to support this finding. As the record demonstrates that the magistrate considered all of the statutory criteria, as well as the division of the marital assets and debts, in fixing the amount of spousal support, we cannot say that the amount provided to Ms. Novick was unreasonable, arbitrary or unconscionable.[9]
As the trial court has retained jurisdiction over the award, it may modify the amount if there is a change in circumstances. The second assignment of error is overruled.
In her third assignment of error, Ms. Novick argues that the trial court's order permitting a modification of spousal support upon Mr. Novick's voluntary retirement constituted an abuse of discretion. We disagree.
Ms. Novick concedes that Mr. Novick is entitled to seek early retirement from ATT if he wishes. In fact, the record reveals that, with Ms. Novick's agreement, Mr. Novick had twice put in for early retirement during their marriage. But Ms. Novick argues that since she has no ability to develop employment options in the future, she will be dependent upon the spousal support. The magistrate found that Ms. Novick did have the ability to seek employment but chose not to do so. Furthermore, Ms. Novick will receive her share of money from any retirement pension. Because there is competent, credible evidence supporting the magistrate's finding that Ms. Novick has the ability to work, and because she will receive her share of the retirement pension, the trial court did not abuse its discretion in providing that the spousal-support award may be modified upon Mr. Novick's retirement. The third assignment of error is overruled.
In her fourth assignment of error, Ms. Novick contends that the trial court abused its discretion by failing to order Mr. Novick to secure the award of spousal support with a policy of life insurance or to make it chargeable against his estate. We do not agree.
R.C. 3105.18 provides in part that "[a]ny award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise." Thus, the trial court had the discretion to secure the spousal-support obligation with a life insurance policy. Here, the magistrate recommended that the spousal-support award terminate upon the occurrence of certain contingencies, including the death of either party. Upon review of the record, we conclude that the trial court did not abuse its discretion in refusing to secure the award with a life insurance policy.[10] As Ms. Novick did not file an objection with the trial court regarding the absence of a provision making the spousal-support award chargeable against Mr. Novick's estate, we do not consider that issue on appeal.[11]
Accordingly, the fourth assignment of error is overruled.
Ms. Novick's fifth assignment of error challenges the trial court's failure to award her reasonable attorney fees and costs. We are unpersuaded.
Pursuant to R.C. 3105.18(H), an award of attorney fees is appropriate only upon the court's determination that the person from whom fees are sought has the ability to pay the fees, and that "either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if the court does not award reasonable attorney's fees." The trial court's decision on fees will not be reversed absent an abuse of discretion.[12]
Here, the trial court awarded Ms. Novick $5,000 and ordered that the money be used for attorney fees and moving expenses. Furthermore, the court awarded Ms. Novick $875 in attorney fees, one-half of the amount that Mr. Novick received through his legal plan from his employer. The magistrate made the appropriate statutory findings and created an appropriate record for review regarding the calculation of attorney fees. The court noted that the fees charged by each attorney were reasonable and that Ms. Novick had incurred over $20,000 in fees. The record indicates that over one-half of that amount has been paid. Although Ms. Novick has less earning potential than Mr. Novick, this was accounted for in the award of spousal support and the distribution of marital assets.[13] Accordingly, we can not say that the trial court acted arbitrarily in awarding $5875 in attorney fees and expenses. Furthermore, the trial court did not abuse its discretion in ordering Ms. Novick to pay the costs of the deposition of her expert witness. The remaining costs of the litigation were ordered to be divided equally between the parties. The fifth assignment of error is overruled.
In her sixth, and final, assignment of error, Ms. Novick maintains that the trial court abused its discretion by failing to award her one-half of Mr. Novick's 1999 bonus. The assignment fails because the magistrate charged Mr. Novick with the full amount of the bonus in determining the division of the marital assets. Ms. Novick's sixth assignment of error is overruled.
 Conclusion
In sum, we hold that the trial court, based on the particular facts of this case, did not abuse its discretion in fashioning a prospective spousal-support award, nor did it abuse its discretion in determining the amount, duration and conditions of the award. Accordingly, all assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Painter and Shannon, JJ., concur.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83,87.
[2] Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597,599.
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1141.
[4] See Middendorf v. Middendorf (1998), 82 Ohio St.3d 397,696 N.E.2d 575.
[5] See R.C. 3105.18(C)(1).
[6] We do not review the evidence supporting the finding of cohabitation here because Ms. Novick did not specifically object to that finding, regarding it as a "pre-decree" finding and that it had no bearing on the post-decree award of spousal support.
[7] Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83,84, syllabus.
[8] R.C. 3105.18(B); Doan v. Doan (Oct. 30, 1998), Hamilton App. No. C-970101, unreported.
[9] See R.C. 3105.18(C)(1)(a) through (n).
[10] Stackhouse v. Stackhouse (July 25, 1997), Montgomery App. No. 16422, unreported.
[11] See Foran v. Fisher Foods, Inc. (1985), 17 Ohio St.3d 193,194, 478 N.E.2d 998, 999.
[12] Andwan v. Andwan (July 2, 1999), Hamilton App. No. C-980711, unreported.
[13] See Raphael v. Raphael (Nov. 19, 1999), Hamilton App. No. C-980696, unreported.